NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

:
DIANE RAYMOND,  :
 :
        Plaintiff, : Civil No. 07-1662 (RBK)
 :
      v. : **OPINION**
 :
MICHAEL J. ASTRUE, COMMISSIONER :
OF SOCIAL SECURITY, :
 :
        Defendant. :
 :

---

**KUGLER**, United States District Judge:

This matter comes before the Court upon appeal by Plaintiff Diane Raymond ("Raymond" or "Claimant"), pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). For the reasons set forth below, the Court affirms the decision of the Commissioner.

**I.    BACKGROUND**

Raymond alleges she is disabled with an onset date of October 4, 2004. She has not worked since July of 2000. She contends in her application for benefits that she is disabled as a result of degenerative joint disease, anxiety, depression, diabetes, degenerative disc disease, thyroid disease, hernia, and high blood pressure. There is also evidence she suffers from obesity

and irritable bowel syndrome ("IBS").

Prior to July 1, 2000, Raymond worked as a bookkeeper doing general clerical work. (R. at 68.) She claims in her application she was laid off "because the depression and anxiety were affecting [her] job performance." (Id.) She had been employed in this type of work for 18 years. (R. at 60.) She has not been employed since being laid off in 2000.

Raymond began seeing a psychiatrist, Dr. Prabhaker Patel, on March 12, 2003. (R. at 116-22.) Dr. Patel, on Raymond's first and subsequent visits, noted that she had "no significant problems." (R. at 116-122.) He did prescribe four drugs to control her depression and anxiety. (R. at 122.) She continued to see Dr. Patel every two to three months for a check up and medication renewal. (R. at 116-22.) At an appointment on August 21, 2003, Dr. Patel noted an increase in her depression and doubled her prescription for Lexapro, which is used to treat depression and general anxiety disorders. (R. at 120.) Her last visit to Dr. Patel was on July 15, 2004. Dr. Patel again noted no significant problems and stated she was "[d]oing ok." (R. at 116.)

Raymond began seeing a general physician, Dr. Gintare T. Gecys, on September 23, 2004. (R. at 137.) She complained of back and joint pain as well as joint swelling and stiffness. (R. at 138.) Dr. Gecys diagnosed her with anxiety, depression, obesity, and possible hypertension and refilled her medications for depression and anxiety. (R. at 138.)

On October 15, 2004, a lumbar spine examination discovered no evidence of spondylolysis or spondylolisthesis but revealed "significant sclerosis in the lower lumbar zygapophyseal joints." (R. at 142.) The treating physician noted osteoporotic and degenerative changes and a narrowing of the disc space at L5-S1. (Id.)

During a visit to Dr. Gecys on November 15, 2004, Raymond complained of shortness of breath from walking, perhaps as a result of weight gain. (R. at 144.) She also complained of a change in her bowels over the preceding three to four months. (Id.) She also continued to complain of sharp back pain. (Id.) Dr. Gecys continued Raymond's depression and anxiety medications and started her on Levoxyl, a thyroid medication. (R. at 146.)

In response to the change in her bowel movements, Raymond had a colonoscopy on December 7, 2004. (R. at 123.) The test was negative for colon cancer and positive for internal hemorrhoids. (Id.) Raymond's doctors advised increasing the fiber in her diet. (Id.)

During a follow-up with Dr. Gecys on January 14, 2005, Raymond stated she was "[d]oing well" and "looking forward to []taking off some weight," and she discussed with Dr. Gecys a proper diet and exercise. (R. at 153.) She did however claim to have colitis and reported the need to go to bathroom after eating. (Id.) Dr. Gecys diagnosed her with IBS and again recommended fiber. (R. at 154.)

On September 29, 2005, Raymond complained her knees hurt when she stood. (R. at 156.) She continued to complain of back pain, joint pain, and stiffness but denied gastrointestinal problems. (R. at 157.) Dr. Gecys noted that Raymond's weight was down a little, but still described her obesity, depression, and anxiety as unchanged. (Id.)

On November 17, 2005, Raymond had X-rays taken of her back and knees. (R. at 133,135.) There was again no evidence of spondyloysis or spondylolysthesis but further arthritic changes in her back were described. (R. at 133.) X-rays of her knees showed moderate arthritic changes. (R. at 135.)

On December 8, 2005, Dr. Gecys again noted Raymond's depression, anxiety, and

obesity were unchanged and noted the addition of diabetes as a new problem. (R. at 163.) At this last visit Raymond's weight is listed at 225 pounds. (R. at 160.) On January 12, 2006, her weight was 246 pounds. (R. at 216.) Raymond discussed her newly developed diabetes with her doctor, and they talked about her diet and how to test her blood sugar at home. At this visit, Raymond said that her depression and anxiety were "OK" on her current medications and said that while she used to cry often, she did not do so anymore. (R. at 217.) She denied any gastrointestinal problems on this visit as well. (R. at 217.)

At the hearing before Administrative Law Judge Danny Shoemaker Jr. ("ALJ Shoemaker"), Raymond testified that she was disabled by depression and anxiety beginning on October 4, 2004. (R. at 270.) She testified to not being able to work since 2000 because she would begin crying as soon as she walked in to work. (R. at 271.) She claimed she did not apply for disability benefits until 2004 because she did not think about it because of her depression, and it was only when her back pain became a bigger problem that she thought of seeking benefits. (R. at 171.)

She testified her previous long term employment consisted primarily of clerical office work, but she said that she also spent time walking around the factory to get paperwork signed at the job she worked at for sixteen years. (R. at 273.) Her position also included carrying files up stairs. (Id.) Raymond testified that even without the additional tasks of walking around and carrying files, she would still not be able to succeed at a clerical job anymore because her back and knees would not allow her to sit for eight hours. (R. at 274.)

Raymond testified to having a few clerical jobs after leaving her first job in 1997 because of her depression and anxiety, but she said that she continued to have emotional problems at

these jobs as well.  (R. at 276-78.)  She asserted she had difficulty concentrating, and this had made it difficult to learn new things and caused her to make mistakes.  (R. at 276-77.)  She testified to being laid off from her last job in 2000 after making a "big mistake" with regard to employee pensions.  (R. at 277.)  Raymond testified that she was too depressed to work after that. (R. at 278.)

When discussing her daily life, Raymond testified that she suffered from continuing depression and anxiety.  (R. at 280.)   She stated she didn't feel like doing anything and four or five times a week wouldn't even get dressed in the morning.  (Id.)  She further testified to crying a lot, but she said this had improved since her medication was doubled.  (R. at 281.)  She testified to not leaving the house a week at a time and said that she did not have many friends to spend time with since she quit working.  (Id.)  She also testified she had difficulty following plots of movies she was watching and worried about making mistakes because of her lack of concentration.  (R. at 288-89.)

Raymond testified she had gained around 100 pounds since 2000, though she had lost about 40 pounds before through a program at Weight Watchers.  (R. at 281.)  She attributed her weight gain to quitting smoking, anxiety, depression, and her thyroid.  (R. at 282.)  She said she had not tried to lose weight recently but that she was considering rejoining Weight Watchers or going on the Atkins diet.  (R. at 288-89.)

Raymond further testified about being diagnosed with IBS in 2004.  (Id.)  She claimed to have diarrhea three to four times per week and also said she felt the need to go to the bathroom every time she ate.  (Id.)  She denied ever having any accidents and testified the IBS did not stop her from going out.  (R. at 283.)

Raymond also testified to pain in her hands. (Id.) She stated the pain did not affect her ability to hold things, but she could only type for a half hour without pain. (Id.) She asserted that when she was working, she would come home with her hands throbbing, and she would have difficulty moving her fingers. (Id.) Raymond did not claim this had any affect on her ability to button her clothes or tie her shoes. (R. at 284.)

Raymond also testified to back pain, stating she could only walk for ten minutes or sit for 45 minutes without pain. (R. at 284-85.) Although she said she could continue sitting if given five or ten minutes to stand when the pain became too bad, she testified she would be unable to continue this for eight hours because it would hurt too much. (R. at 285.)

On November 21, 2005, Raymond filed an application for disability insurance benefits alleging disability as of October 4, 2004. (R. at 57.) Her application was initially denied on March 9, 2006 (R. at 24) and denied on reconsideration on May 4, 2006. (R. at 34.) Raymond filed a timely request for a hearing with an ALJ on May 18, 2004 (R. at 35), which was held on September 20, 2006 in front of ALJ Daniel W. Shoemaker Jr. ("ALJ Shoemaker"). (R. at 40.) Raymond was the only person to testify at the hearing. ALJ Shoemaker issued an opinion on September 29, 2006 denying Raymond's claim. (R. at 9.) Raymond filed a request for review on November 8, 2006. (R. at 8.) The Appeals Council denied her request on February 1, 2007, and ALJ Shoemaker's decision became the final decision of the Commissioner. (R. at 4.) Raymond filed this action seeking review of the decision on April 9, 2007. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

District Court review of the Commissioner's final decision is limited to ascertaining

whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984) ("A district court may not weigh the evidence or substitute its conclusions for those of the fact-finder.").

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)) ("[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to

determine whether the conclusions reached are rational."). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Secretary of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d at 114).

### III. DISCUSSION

#### A. ALJ Shoemaker's Decision

The Commissioner conducts a five step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a). The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner determines whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues to step four to evaluate the claimant's residual functional capacity ("RFC") and to analyze whether the RFC would entitle the claimant to return to her "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 20

C.F.R. § 404.1520(f)).

Before applying the five-step process, ALJ Shoemaker first concluded that Raymond last met the insured status requirements of the Social Security Act on December 31, 2004. (R. at 13.) This means that Raymond was required to prove an inability to work beginning on or prior to December 31, 2004. The ALJ next concluded that Raymond had not engaged in substantial gainful activity at any time since the alleged onset of disability on October 4, 2004. He concluded that Raymond suffered from several severe impairments, specifically degnerative joint disease, chronic low back pain syndrome, and irritable bowel syndrome. (R. at 14.) However, ALJ Shoemaker determined that these impairments did not meet the requirements of any listed impairments, specifically referencing the listings in Section 1.00 (musculoskeletal system disorders) and Section 12.00 (mental disorders.) (R. at 14-15.) The ALJ also found that though Raymond alleged impairments due to anxiety and depression, there was no objective medical evidence establishing any significant mental functional limitations prior to December 31, 2004. (R. at 14.) He concluded that these impairments were not severe on or before that date. (R. at 14.)

The ALJ next determined that through the date she was last insured for DIB, Raymond could lift and carry up to twenty pounds occasionally and ten pounds frequently, could stand and/or walk for up to about six hours, and could sit for about six hours in an eight-hour workday. (R. at 16.) ALJ Shoemaker noted that she had unlimited use of her upper and lower extremities for pushing and pulling, other than for lifting and carrying, for which she was somewhat limited. (R. at 16) He also concluded that there was no objective medical evidence establishing any significant mental functional limitations prior to December 31, 2004. (R. at 16.) Based on this

conclusion as to Raymond's RFC, the ALJ determined that she could return to her past relevant work as a general office clerk, classified as light in exertional demands and semi-skilled in nature. (R. at 16-17.) This conclusion that Raymond could return to her past relevant work then directed a finding of non-disability, and the testimony of a vocational expert was not required. (R. at 17-18.)

Raymond assigns error to the ALJ's conclusions on several issues. First, she argues that the ALJ's conclusion that any psychological impairments were not severe before the date she was last insured was in contravention of the medical evidence. (Pl.'s Br. 13-15.) Next, she contends that the ALJ's conclusion regarding her RFC was flawed because it was inconsistent with his conclusions regarding the severity of her irritable bowel syndrome. (Pl.'s Br. 15-17.) She also argues that ALJ Shoemaker erred in failing to address her obesity. (Pl.'s Br. 17-18.) Finally, she argues that it was error to not credit her subjective complaints and to find her testimony not credible. (Pl.'s Br. at 18-19.)

### B. Consideration of Non-Exertional Limitations

Raymond contends that substantial evidence does not support ALJ Shoemaker's decision that her anxiety and depression were not severe, and she argues that her limitations from these ailments are demonstrated by objective medical evidence through the reports of Drs. Patel and Gecys.

The ALJ's conclusion regarding Raymond's anxiety and depression meant that he disposed of these claims at step two of the analysis. This step is meant to be a screening device to dispose of groundless claims. <u>Newell v. Comm'r of Soc. Sec.</u>, 347 F.3d 541, 546 (3d Cir. 2003). An impairment will be found "not severe" if the evidence shows a slight abnormality or a

combination of slight abnormalities having "no more than a minimal effect on an individual's ability to work." Id. (citing Soc. Sec. Ruling 85-28).  Doubts with regard to severity should be resolved in favor of the claimant.  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

The Court finds that the ALJ's determination that Raymond did not have a severe mental impairment was supported by substantial evidence.  An ALJ must corroborate subjective complaints regarding a disability with objective medical evidence. 20 C.F.R. § 404.1529(a). Here, Raymond's complaints are not corroborated by the medical evidence in the record.

There is evidence that Raymond sought psychiatric treatment from Dr. Patel from March 2003 through July 2004.  However, Dr. Patel never noted any limitations on her functioning and indicated that she had no significant problems.  In fact, Dr. Patel's notes indicate that Raymond's anxiety and depression were decreasing on almost every visit.  (R. at 116-22.)  Dr. Patel did not indicate that Raymond had any limitations on her functioning as a result of her anxiety or depression, and the Court is unwilling to find that merely because an individual sees a mental health practitioner she must have a severe mental impairment.  Raymond stopped seeing Dr. Patel before her alleged onset date and began seeing Dr. Gecys, a family practitioner.  Dr. Gecys's notes are devoid of discussion about Raymond's mental health status; Dr. Gecys merely continued the medications initially prescribed by Dr. Patel and noted that Raymond indicated she was doing "OK" on those medications.

The only evidence regarding Raymond's inability to focus or concentrate is her own testimony; there is no objective medical evidence supporting these complaints because no physician mentioned these problems.  ALJ Shoemaker did not credit Raymond's complaints

11

because he concluded that Raymond was not credible on this point, as will be discussed below. Also, Raymond admitted that these symptoms were abated somewhat with medication. (R. at 280.) Because there was no objective medical evidence showing a severe mental impairment, the ALJ's determination that Raymond's anxiety and depression did not constitute a severe mental or non-exertional impairment before December 31, 2004 is supported by substantial evidence.

### C.  RFC Determination

Raymond argues that the ALJ's RFC determination is inconsistent with his finding that her IBS was a severe impairment; she contends that the ALJ could not have properly accounted for this severe impairment in her RFC. She claims that if she has IBS, then "it would obviously have an impact" on her ability to work.

At step four of the analysis, the Commissioner determines whether, despite her severe impairments, the claimant retains the RFC to perform her past relevant work. See 20 C.F.R. §§ 404.1520(e), (f). The RFC reflects "what the claimant can still do despite her limitations." See 20 C.F.R. § 404.1545(a). In making this determination, "the ALJ must consider all evidence before him." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Thus, "[a]lthough the impairment must be medically determinable, it need not be a 'severe' impairment to be considered in the RFC assessment." Rutherford v. Barnhart, 399 F.3d 546, 554 n.7 (3d Cir. 2005); see also 20 C.F.R. § 404.1523 ("[W]e will consider the combined effect of all of your impairments without regard to whether such impairment, if considered separately, would be of sufficient severity."). The determination of a claimant's RFC is the exclusive responsibility of the ALJ. See 20 C.F.R. §§ 404.1527(e)(2), 404.1546.

The Court finds that the ALJ did properly discuss Raymond's IBS when calculating her RFC.  ALJ Shoemaker noted Raymond's statements that she is not on any medication for the impairment and has not had any accidents.  (R. at 15.)  He also noted that Raymond told Dr. Gecys in January 2006 that she was having no current bowel problems.  (R. at 16.)  Raymond in her testimony at the hearing indicated that though she has diarrhea three times a week, it manifests itself only in having to go to the bathroom immediately after eating, and she has not had any accidents, had to bring extra clothes with her anywhere, or changed her plans with regard to going out as a result.  (R. at 282-83.)  She did not mention any limitations other than needing to have a bathroom nearby when she is out of her home.  (R. at 283.)   The ALJ need only include in the RFC those limitations which he finds to be credible.  See Hartranft, 181 F.3d at 362 (upholding the ALJ's finding that claimant's allegations were exaggerated and properly discounted where the medical evidence and claimant's own testimony were inconsistent with the allegations).  Finally, ALJ Shoemaker specifically noted that "at no time[] did any treating or examining physician impose any reasonably supported restrictions on the claimant's functional abilities."  (R. at 16.)

There is no objective medical evidence in the record regarding any functional limitations resulting from Raymond's IBS, and Raymond did not testify that she in fact had any functional limitations from her IBS.  The ALJ therefore did not err in his treatment of this impairment in calculating Raymond's residual functional capacity to work, and the RFC determination is supported by substantial evidence.

### D.     Evaluation of Claimant's Obesity

Raymond contends that the ALJ's decision cannot be supported by substantial evidence

because it includes no mention of her obesity. However, because this is the first time Plaintiff has raised this issue and has offered no evidence on how her obesity affects her ability to work, this argument fails.

In <u>Rutherford</u>, the Third Circuit considered how a claimant's obesity would be evaluated under the five-step analysis. <u>Rutherford</u>, 399 F.3d 546. The claimant in that case never claimed obesity as a cause of her inability to work in the administrative proceedings, and even when asked directly by the ALJ to list her impairments she did not include it. The court noted "even if we assume-in accordance with common sense-that the administrative record's evidence of [claimant's height and weight] sufficed to alert the ALJ that obesity could be a factor, [claimant] has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers." <u>Rutherford</u>, 399 F.3d at 553.

Here, Raymond similarly did not mention any limitations or problems caused by her obesity. Though she discussed problems with her back and knees, she never attributed these to her weight, nor did she mention other potential weight-related problems in her application for benefits or her testimony at the hearing. Her attorney did mention her weight gain at her hearing, and he noted in her appeal that "[h]er weight and other impairments" would have met the requirements of the former listing based on obesity and stated that the combined effect of these conditions would preclude any work activity. (R. at 94, 102.) However, the record contains no assertions as to how Raymond's obesity affects her ability to work. Simply asserting that it does is insufficient, because it remains the claimant's burden to show that any impairment results in work-related limitations. See <u>Jenkins v. Comm'r of Soc. Sec.</u>, 192 F. App'x 113 (3d Cir. 2006).

Moreover, Dr. Gecys acknowledged Raymond's obesity but noted no functional limitations nor any related problems. See Sassone v. Comm'r of Soc, Sec., 165 F. App'x 954, 958 (3d Cir. 2006) (ALJ committed no error in not mentioning obesity where obesity was diagnosed but no physician indicated it was a severe impairment, and ALJ's discussion and adoption of physician's conclusions constitutes indirect consideration and rejection of obesity-related impairment).

Because there is no objective medical evidence of Raymond's obesity in relation to any resulting functional limitation, the ALJ did not err in omitting a discussion of Raymond's weight from his analysis.

      **E.    Claimant's Credibility**

Lastly, Raymond argues that the ALJ improperly rejected her subjective complaints of pain. She contends that the ALJ's analysis of her credibility was overly conclusory without pointing to any specific inconsistencies between her testimony and the objective medical evidence.

The Social Security Regulations provide the authoritative standard for the evaluation of a claimant's subjective complaints, including pain. Hartranft, 181 F.3d at 362. First, a claimant must establish, by objective medical evidence, a medical impairment that could reasonably support the allegations of pain or other symptoms which, when considered with all other evidence, could lead to a conclusion of disability. 20 C.F.R. § 404.1529(a). Once this threshold showing is met, the ALJ must then evaluate the intensity and persistence of the symptoms to determine whether they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). Thus, the ALJ is required to assess the degree to which the claimant is accurately stating his subjective symptoms or the extent to which they are disabling. Hartranft, 181 F.3d at 362.

When making this credibility finding, the ALJ must indicate which evidence he rejects and which he relies on as the basis for his findings.  See Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999) (discussing the need for specificity when assessing a claimant's credibility to ensure that the ALJ's finding is based upon objective medical evidence).  The ALJ's "determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations."  Id.  (quoting Social Security Ruling 95-5P, 1995 WL 670415, at *2).  However, inconsistencies in a claimant's testimony permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible.  See Burns v. Barnhart, 312 F.3d 113, 129-30 (3d Cir. 2002) (upholding the ALJ's finding of no credibility because the claimant could not point to any medical evidence to support his pain allegations other than his own testimony, which was inconsistent with the allegations).

Raymond contends that the ALJ's discussion of her credibility is confined to his characterization that her testimony was "overly vague, somewhat evasive and exaggerated, considering the objective medical findings."  (Pl.'s Br. at 20; R. at 15-16.)  However, this is not the case.  When describing the substance of Raymond's testimony, ALJ Shoemaker noted that though Raymond said her hands hurt after typing for thirty minutes, she had no problems with grip or fine manipulation.  (R. at 15.)  He noted that though she said she was diagnosed with IBS and had diarrhea, she said she took no medications for this impairment and had no accidents.  (R. at 15.)  The ALJ also specifically noted that through Raymond testified that she has had diarrhea immediately after eating since 2004 and is so depressed that she does not get dressed four to five

times per week, Raymond told Dr. Gecys in January 2006 that she had no current bowel problems and her depression was controlled with her medications. (R. at 16.) Contrary to Raymond's contentions, ALJ Shoemaker did highlight the parts of her testimony he found exaggerated in light of the objective medical findings, and he rejected her complaints regarding her mental impairments and the disabling nature of her IBS as a result.

ALJ Shoemaker acted within his discretion when he determined that Raymond's subjective complaints of her disability were inconsistent with other evidence in the record. See Woody v. Secretary of Health and Human Servs., 859 F.2d 1156, 1159 (3d Cir. 1988)(" [a] claimant may not rely solely on his own stated symptoms, but must provide medical signs and findings. . . which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged"). Therefore, the Court finds substantial evidence in the record to support ALJ Shoemaker's decision on this issue.

### IV. CONCLUSION

Because ALJ Shoemaker's decision is supported by substantial evidence in the record, this Court affirms his decision that Raymond was not disabled on December 31, 2004 and is therefore not entitled to DIB.


Dated   June 25, 2008              /s/ Robert B. Kugler
                                   ROBERT B. KUGLER
                                   United States District Judge